**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-4543 |
| | ) | (1:21-CR-00458-JKB-1) |
| ELIAS NICK COSTIANES, | ) | |
| Defendant - Appellant. | ) | |

**APPELLANT'S RESPONSE TO COURT'S ORDERS OF**
**FEBRUARY 27, 2025 (ECF No. 23) AND MARCH 25, 2025 (ECF No. 30)**

Appellant, Elias Nick Costianes, by and through undersigned counsel, hereby files this answer to the three questions from Court's Orders dated February 27, 2025 (ECF No. 23) and March 25, 2025 (ECF No. 30), and submits the following where he again requests vacatur and remand for dismissal because his appeal has been mooted by the Presidential pardon and it is in the interests of justice given that the Department of Justice stated it will no longer prosecute the matter:

## I.    INTRODUCTION AND SUMMARY.

There is no controversy or disagreement among the parties that President Trump's January 20, 2025, Executive Order ("EO") Pardon[1] applies to Appellant Costianes. Because he accepted the pardon[2] his appeal is now moot. This Court,

---

[1] *See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025); (ECF No. 19, Exhibit A, Addendum at 24-25)
[2] ECF No. 19 Exhibit, Pardon Certificate issued by the U.S. Pardon Attorney upon his request that named this case.

when following the established process for his mooted appeal, should vacate the conviction of the lower court and remand for dismissal. Likewise, since the Government has stated it will no longer prosecute the matter, (ECF No. 33 at 4), this Court can moot the appeal with vacatur and remand under its 28 U.S.C. § 2106 authority.

Mr. Costianes brought the ECF No. 19 Emergency Motion before this Court on February 12, 2025, because he had been ordered to report to U.S. Marshals' custody – despite having been pardoned by the U.S. President on January 20, 2025, for any charge or crime related to the events of January 6, 2021. Mr. Costianes gave notice to the Court in his Motion that he accepted the pardon. He brought the pardon before this Court for the judicial action of vacatur and remand in ECF No. 19 and 27. He has not changed his position.

There is no controversy over the pardon's constitutionality, text, or application in this case. In ECF No. 20-1, 27, and 33, the U.S. Department of Justice (DOJ) in speaking for the U.S. President stated that the pardon applies to Mr. Costianes. The DOJ consistently concurred that the Pardon Proclamation applies to Mr. Costianes. The Government wrote in Response to ECF No. 19, "The United States agrees that the President pardoned him, he should be immediately released from custody in connection with this case, his sentence should be stayed, and this Court should resolve his motion on an expedited basis. Because the President's pardon has mooted

Mr. Costianes's appeal, the Court should also vacate his judgment of conviction. *See United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (per curiam)." ECF No. 20-1 at 1.[3, 4] The parties agreed in the Joint Motion at ECF No. 27 that this Court should vacate the convictions and remand with the order to the district court to dismiss.

The application of the pardon was not made unilaterally here and represents a current, unified DOJ declaration. The Government stated that, "After consulting with the Department of Justice's leadership, the United States has concluded that the President pardoned Mr. Costianes of the offense[ ]…This determination by the Executive is 'conclusive and preclusive.' *Trump*, 603 U.S. at 608." ECF No. 20-1. at 3.

Federal Rule of Criminal Procedure 48(a), "gives the government the power to move to dismiss any count of the indictment as long as the defendant's appeal is pending and the decision is therefore not final." *See Rinaldi v. United States*, 434 U.S. 22, 25, 31 (1977). But when the case is on appeal and a pardon issues, the usual

---

[3] "The President's commutation order simply closes the judicial door. Absent some constitutional infirmity in the [] order, which is not present here, we may not readjust or rescind what the President, in the exercise of his pardon power, has done." *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017).

[4] On the process for a case on appeal, *see Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S. Ct. 2149, 60 L. Ed. 2d 735 (1979) (reversing appellate court for failing to follow the vacation technique); *U.S. v. Munsingwear, Inc.*, 340 U.S. 36, 71 S. Ct. 104, 95 L. Ed. 36 (1950).

procedure as shown in *Schaffer* and other court precedents first requires vacatur because the appeal is mooted by the pardon. The court then issues a remand to dismiss the indictment where the Government can no longer prosecute. The DOJ does not need to seek a Rule 48(a) dismissal once vacatur is ordered. As in *Schaffer*, for all the January 6th cases that fell under the Pardon Proclamation while on appeal, the U.S. Appeals Court for D.C. vacated and remanded with the order to dismiss the indictments and cases as moot.

This Circuit follows the above process for vacatur and remand to dismiss for mootness whether for a pardon or any other reason: "Once a case is rendered moot on appeal, we customarily vacate the opinions and remand with direction to dismiss." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021). Therefore, the pardon provides what could be considered a "forcing function" as to what court the law first operates in when a case is on appeal. Thus, when a pardon moots a case on appeal, it is a given by common sense as well as in case law that the DOJ can no longer prosecute.

Mr. Costianes continues to be incarcerated after having been pardoned. The U.S. Marshals for unknown reasons have to date retained custody instead of sending Mr. Costianes to his assigned Bureau of Prisons (BOP) facility where the BOP requires only the Pardon EO for his release. The U.S. Marshals continue to require a court order for Mr. Costianes' release despite the Presidential Pardon EO. Since

the lower court recently denied a consent motion for Mr. Costianes' sentence to be stayed pending this appeal (D. Md. 1:21-cr-00458-JKB ECF No. 167) the action is now at this Court for an Order. Because of the above, Mr. Costianes respectfully requests that this Court act and issue an Order for vacatur and remand, with his release included.

## II.    PROCEDURAL BACKGROUND

On January 6, 2021, Mr. Costianes was a participant at the protest at the United States Capitol. As a result of his peaceful presence that day, the United States (DOJ) secured a criminal complaint against Mr. Costianes on February 3, 2021, in the U.S. District Court for the District of Columbia (D.D.C.) in *United States v. Costianes*, Case No. 21-cr-00180-RJL. ECF No. 1, 1-1.

The DOJ concurrently applied for a search warrant on February 10, 2021, in the U.S. District Court for the District of Maryland (D. Md.) to search Mr. Costianes' Maryland home, vehicle, phone, and media drives for evidence relating to offenses at the United States Capitol on January 6, 2021. (See Exhibit A). Both the arrest warrant and search warrant were executed upon Mr. Costianes on February 12, 2021, at his Maryland residence. ECF No. 5, No. 21-cr-00180-RJL. During the execution of both warrants on February 12, 2021, the Government obtained his phone and continued its search for evidence and "fruits" of the January 6th offenses. The search warrant included requirements to *find weapons and evidence of Mr. Costianes' state*

*of mind*. The FBI used software to extract and search *all his phone contents going back years*.

On August 23, 2021, the DOJ then brought a separate criminal complaint against Mr. Costianes in the district of Maryland in *United States v. Costianes*, Case No. 21-cr-00458-JKB. D. Md. ECF No. 1. Thereafter, the Government returned Indictments. D. Md. ECF No. 17, 34.

On June 8, 2023, Mr. Costianes was arraigned on a Superseding Indictment, and pursuant to a plea agreement, entered a guilty plea to Count 9s (D. Md. ECF No. 83). According to the Government, "Mr. Costianes was non-violently possessing contraband in violation of federal law." 4th Cir. ECF No. 20-1 at 2. The charge stemmed from the Government's pursuit of evidence related to the events at or near the U.S. Capitol on January 6th. *Id*. See also D. Md. ECF No. 83.

On September 24, 2024, Mr. Costianes was re-sentenced to serve a period of incarceration of one year and one day. D. Md. ECF No. 139.

On October 7, 2024, Mr. Costianes timely filed a notice of appeal. (D. Md. ECF No. 143). The present appeal is pending, and the briefing schedule has been suspended pending the resolution of the subsequent relief sought by the parties to vacate the conviction and remand to dismiss. (ECF No. 29).

On January 20, 2025, President Donald Trump issued an Executive Order titled "Proclamation: Granting Pardons and Commutation of Sentences for Certain

Offenses Relating to the Events At or Near the United States Capitol on January 6, 2021." *See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025); (ECF No. 19, Exhibit A, Addendum at 24-25).

Mr. Costianes had not been tried in the District of Columbia when the above EO was issued. On January 21, 2025, the Government filed a motion to dismiss with prejudice pursuant to the President's EO, and the U.S. District Court in D.C. signed the Order to Dismiss the indictment with prejudice the same day. *See* D.D.C. Case No. 21-cr-00180-RJL, ECF No. 92, 93.

On January 22, 2025, Mr. Costianes filed a Motion for Appropriate Relief in the U.S. District for the District of Maryland, asking to stay the execution of Mr. Costianes' District of Maryland sentence to seek application of the EO to his District of Maryland conviction that related to January 6th. D. Md. ECF No. 158.

On January 28, 2025, the district court denied Mr. Costianes' request to stay his sentence, and ordered that Mr. Costianes surrender to the U.S. Marshals on February 12, 2025. D. Md. ECF No. 159.

On February 12, 2025, Mr. Costianes surrendered to the U.S. Marshals as ordered, and filed an Emergency Motion in this Court, requesting that Mr. Costianes' sentence be stayed, that the Court enforce the Executive Order in this case with vacatur and remand, and that Mr. Costianes be released from confinement. (ECF No. 17). The Motion gave notice to the Court that he accepted the Pardon.

On February 19, 2025, the Government filed a response with this Court agreeing that the Pardon EO applied. The DOJ wrote:

> After consulting with the Department of Justice's leadership, the United States has concluded that the President pardoned Mr. Costianes of the offenses in the indictment. This determination by the Executive is '*conclusive and preclusive.*' *Trump*, 603 U.S. at 608."

(ECF No. 20-1 at 3) (emphasis added).

The Government further wrote that:

> He should be immediately released from custody in connection with this case because the President has pardoned him of the offenses in the indictment. See *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1867) ("A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence."). So the judgment of conviction provides no basis for Mr. Costianes's continued imprisonment.

(ECF No. 20-1 at 3).

The Government also moved to immediately release Mr. Costianes from custody in connection with this case, to vacate the judgment of conviction, and to remand the case with instructions to dismiss the indictment. (ECF No. 20-1 at 4-5). The Government provided the legal justification for the Court to proceed with vacatur and remand for dismissal:

> As the D.C. Circuit explained in *Schaffer*, when a criminal defendant on appeal receives "the unpredictable grace of a

presidential pardon," the pardon moots the appeal and "ends all litigation" for reasons unrelated to "any voluntary acts of settlement or withdrawal by [the defendant]." 240 F.3d at 38. Because "the appeal process [has] terminated prematurely," final judgment "never has been reached." *Id*. In these circumstances, the Court should vacate the judgment of conviction and remand with instructions to dismiss. *Id*. That established practice should be followed here. See, e.g., *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021) ("Once a case is rendered moot on appeal, we customarily vacate the opinions and remand with direction to dismiss.").

(ECF No. 20-1 at 4).

On March 12, 2025, the parties filed a Joint Motion to Vacate Conviction and Remand for Dismissal, and to remand the case to the district court to dismiss the indictment. (ECF No. 27).

On March 21, 2025, the district court issued a Memorandum and Order denying Mr. Costianes' March 14, 2025, Motion to stay his sentence. (D. Md. ECF No. 167). The district court wrote that Mr. Costianes did not carry his burden under 18 U.S.C. 3134(b)(1)(B) to explain why his conviction is likely to be vacated on appeal, or how Federal Rule of Criminal Procedure 48(a) applies in the context of a judgment that the court deemed "final." (D. Md. ECF No. 167).

On March 25, 2025, this Court ordered the parties to provide supplemental responses, as requested in the Court's February 27, 2025, Order so that the Court can consider both the outstanding emergency motion, as well as the joint motion to vacate and remand. (ECF No. 30).

As of the filing of this response, Mr. Costianes has now served more than 45 days of his sentence and remains incarcerated, notwithstanding the Government's request to vacate his conviction and dismiss this pending matter.

## III. ANSWERS TO THE COURT'S QUESTIONS

This Court directed the parties to answer three questions:

1. Separate and apart from the issue of mootness, whether this Court has jurisdiction to consider, and whether it is prudent for this Court to consider, Costianes' motion in absence of any ruling by the district court on the January 20, 2025 Executive Order (the "Pardon") and in absence of a motion to vacate Costianes' sentence.

2. Whether this Court has authority to review and interpret the Pardon.

3. Whether the Pardon applies in this case as a conviction "related to events that occurred at or near the United States Capitol on January 6, 2021."

(ECF No. 23).

As a threshold matter, Mr. Costianes is not requesting that this Court, or any court, "interpret" the language of the Executive Order. The President has the "Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II, § 2, cl. 1. The DOJ, speaking for the sitting President of the United States, delivered the Executive Branch's decision about a non-justiciable Pardon that falls directly under the Executive Power of the United States Constitution. "Ordinarily, the President relies on the Department of Justice—specifically, the Attorney General

and Office of the Pardon Attorney—to administer the pardon process." *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020).

The Executive Order here similarly directed that:

> The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately…[and shall] pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021.

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025).

The DOJ declared that the Pardon applies to Mr. Costianes in this case. (ECF No. 20-1, 27, 33). Respectfully, Mr. Costianes is asking that this Court not disturb the Executive Branch's determination that the Pardon applies.

Separate and apart from any issue of a court's "interpretation" of the Pardon EO is the relief sought by the Government: to vacate the non-final conviction (pending appeal) pursuant to 28 U.S.C. § 2106, and to remand to the district court to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48(a). (ECF No. 27). While the basis for the Government's exercise of its discretion in moving for that relief is rooted in the change of circumstances that occurred with the Pardon EO, the Court does not have to analyze the applicability of the EO to grant the relief. Rather, where the DOJ is not going to further prosecute, (ECF No. 33 at 4), and

would not have prosecuted, a "non-violent[ ]" case like Mr. Costianes' that merely related to the non-violent January 6th offense, with no other evidence that Mr. Costianes was previously committing any offense, (ECF No. 20-1 at 2, No. 33), and where the Government has moved to dismiss cases at the district court of other defendants similarly situated,[5] a court has "little discretion" in denying a Government's Rule 48(a) motion, and in this case, would not be able to conclude that "grant[ing] it would be clearly contrary to manifest public interest" because no court would be able to find that the Government in this case filed the motion to dismiss "in bad faith." *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983) (citing *Rinaldi v. United States*, 434 U.S. 22, 30 (1977) (per curiam)).

**A.  Answer to Question 1: This Court has Jurisdiction, and it is Prudent for this Court to Grant the Relief Requested by the Parties, Without any Reliance on a Ruling by the District Court.**

This Court has jurisdiction to grant the relief jointly requested by the parties in ECF No. 17, ECF No. 20-1, and ECF No. 27, to vacate the conviction and remand for the case to be dismissed. This appeal is properly before this Court pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Outside the issue of "mootness," 28 U.S.C. § 2106 empowers the Court to grant the requested relief.

---

[5] *United States v. Zacharia Sattler*, No. 23-cr-00438-JRR ECF No. 41 (D. Md. ECF No. 41).

However, "where it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with directions to dismiss." *Clipper v. Takoma Park*, 898 F.2d 18, 20 (4th Cir. 1989) ((citing *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 93 (1979) (quoting *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 267 (1936)); *see also United States v. Munsingwear,* 340 U.S. 36, 39 (1950); *In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. 1983).

Because Mr. Costianes is already over 45 days into serving a one year and a one-day sentence, it is just and prudent for this Court to immediately grant the requested relief of vacatur and remand for dismissal.

1. <u>This Court has Jurisdiction for the Requested Relief Because Exercise of Appellate Jurisdiction Allows It to Make Such Disposition on the Case as Justice Requires</u>.

Mr. Costianes' direct appeal is properly within the jurisdiction of this Court. The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. The district court entered judgment on September 25, 2024. Mr. Costianes timely filed a notice of appeal on October 7, 2024. Thus, this Court's jurisdiction arises under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

In *Patterson v. State of Alabama*, 294 U.S. 600 (1935), the United States Supreme Court said:

> We have frequently held that in the exercise of our appellate jurisdiction we have power not only to correct error in the judgment under review

but to make such disposition on the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the [ ] court may be free to act. We have said that to do this is not to review, in any proper sense of the term, the decision of the [ ] court…but only to deal appropriately with a matter arising since its judgment and having a bearing upon the right disposition of the case.

*Patterson*, 294 U.S. at 607 (internal citations omitted).

In "[a]pplying that principle of decision," the *Patterson* Court "vacate[d] the judgment and remand[ed] the case" for further proceedings. *Id*.

Congress enacted 28 U.S.C. § 2106, which gives statutory power to the appellate courts to make disposition on the case as justice requires:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106.

An appellate court "is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered," in "determining what justice does require," *Patterson*, 294 U.S. at 607, to exercise its discretion in deciding whether to vacate, set aside, or reverse the lower judgment while this case is on direct appeal. 28 U.S.C. § 2106. *Accord United Staes v. State of Michigan*, 623 F.2d 448 (6th Cir.), modified on other grounds, 653 F.2d 277 (6th Cir.), *cert. denied*, 454 U.S.

1124 (1980) (case would be remanded to district court for reconsideration of preemptive effect of new federal regulations); *Childs v. U.S. Bd. of Parole*, 511 F.2d 1270 (D.C. Cir. 1974) (in view of developments of the law since trial court issued order, order would be vacated and case remanded to the district court for further action); *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899, 900 (5th Cir. 1975) ("we are empowered by 28 U.S.C.A. s 2106 to vacate or set aside any decree lawfully brought before this Court for review."); *In re Elmore*, 382 F.2d 125, 127 (D.C. Cir. 1967) (allowing case to be remanded for full hearing and determination in light of new decision); *Pendergrast v. United States*, 416 F.2d 776, 780-81 (D.C. Cir. 1969) ("[I]f applicability of [new decisions] to appellant's episode is not decided while this case is still in the line of direct appeal, appellant may be foreclosed from urging the point at all. With substantial rights hanging in the balance, elemental justice requires our determination whether appellant can reap any benefit from the Simmons-Bailey holdings."); *United States v. Wiley*, 517 F.2d 1212, 1218 (D.C. Cir. 1975) ("[T]he federal appellate courts are governed in their decisionmaking by the statutory directive of 28 U.S.C. s 2106 that they shall dispose of appeals in the interest of justice. This permits and indeed counsels protection of sound and substantial interests of the accused even when they do not rise to the level of constitutional protections.").

In Mr. Costianes' case, there was a substantial change in circumstances in both fact and the law since the judgment was entered. *Patterson*, 294 U.S. at 607. The Pardon EO went into effect while Mr. Costianes' case was on direct appeal. The DOJ, in speaking for the President who issued the Pardon EO, stated consistently that the Pardon EO applies to this case. The DOJ jointly moved to vacate the conviction and to dismiss the indictment. (ECF No. 20-1, 27). The DOJ jointly moved to stay the sentence in the district court pending resolution in this Court. (D. Md. ECF No. 163). The request was denied. (D. Md. ECF No. 167).

Separate and apart from the Pardon EO, the Government no longer believes that pursuing this prosecution against Mr. Costianes' non-final conviction is in the interests of justice. (ECF No. 27). The Government would not today prosecute Mr. Costianes for such conduct, and indeed, the Government has taken steps in other cases to dismiss pending cases that are related to January 6th. For instance, in the same district as Mr. Costianes' case, where the case was not on appeal, the judge signed a Rule 48(a) Order to Dismiss where the case stemmed directly from the execution of a search warrant for the events that happened at the U.S. Capitol on January 6, 2021. *See United States v. Zachariah Sattler*, No. 23-cr-00438-JRR, ECF No. 38, 41. Similarly, in *United States v. Ball*, No. 24-cr-97-TPB-PRL (M.D. Fla. Feb. 25, 2025), the court granted the Government's Rule 48(a) motion to dismiss

citing the Executive Order dated January 20, 2025, as the reason for the dismissal. No. 23-cr-00438-JRR, ECF No. 42, 45.

In denying Mr. Costianes' request to stay his sentence pending the appeal, the district court judge attempted to distinguish the *Sattler* Case, writing, "the Government filed a Rule 48 motion seeking to dismiss the indictment prior to any final judgment" but that "[i]n this case, Mr. Costianes pleaded guilty and was sentenced" and the parties cite to "no authority regarding how Rule 48 applies in the context of a final judgment." (D. Md. 167 at 3-4). The district court also wrote that "more fundamentally, there is no pending Rule 48 motion." (D. Md. 167 at 3-4) (emphasis in original).

First, Mr. Costianes' plea and sentence are not a "final judgment" because his case is pending on direct appeal. A case is final only when "a judgment of conviction has been rendered, *the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.*" *Clay v. United States*, 537 U.S. 522, 525 (2003); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) (emphasis added). *Accord U.S. v. Strayhorn*, 743 F.3d 917, 926 (4th Cir. 2014) (applying this rationale to the application of *Alleyne v. United States*, -- U.S. --, 133 S.Ct. 2151 (2013) to the facts in *Strayhorn* "because this appeal was still pending"). *See also U.S. v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001) (because defendant "did

not file a direct appeal, his conviction became final"). Mr. Costianes' direct appeal has not concluded. Thus, his judgment is not final.

Second, it is not "fundamental[]" that "there is no pending Rule 48 motion," (D. Md. 167 at 3-4), because the Government is waiting for the remand by this Court as requested in ECF No. 19, 27, such that limited jurisdiction may be conferred to the district court on this limited issue, so that the district court may then act on a Rule 48(a) motion. The Government in Mr. Costianes' case has never retreated or varied from the position that Mr. Costianes' non-final judgment should be vacated. (ECF No. 21, 27, 33).

Third, in response to the district court's query as to how a Rule 48 motion may be made after sentencing and while the appeal is pending, there is authority supporting the use of the rule in these circumstances. In *Rinaldi v. United States*, 434 U.S. 22 (1977), pending appeal of a federal conviction, the government moved to remand to move for dismissal of the indictment pursuant to Rule 48(a). The Supreme Court held that it was an abuse of discretion for the district court to refuse to grant the motion, and therefore vacated the judgment and remanded to the district court for the purpose of dismissing the indictment. *Id*.

After *Rinaldi*, the Ninth Circuit said that "[u]nder Federal Rule of Criminal Procedure 48(a), the government has the power to move to dismiss any count of the indictment as long as the defendant's appeal is pending and the decision is therefore

not final." *United States v. Burdeau*, 168 F.3d 352, 359 (9th Cir. 1999) (citing *Rinaldi v. United States*, 434 U.S. 22, 25, 31 (1977) (holding that the district court abused its discretion by refusing to grant Rule 48(a) motion to dismiss indictment even though defendant had already been convicted and sentenced)). *See also United States v. Weber*, 721 F.2d 266 (9th Cir. 1983) (reversing and remanding with directions to grant government's motion to dismiss indictment pursuant to Rule 48(a) that government filed after conviction while defendant's case was on appeal); *United States v. Gonzalez*, 58 F.3d 459, 460 (9th Cir. 1995).

Likewise, the D.C. Circuit has indicated that the government may seek dismissal of criminal charges under Rule 48(a) until a judgment becomes final on direct appeal. *See United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020) (citing *Rinaldi*, 434 U.S. 22); *United States v. Smith*, 67 F.3d 785, 788 (D.C. Cir. 2006) ("The question here is simply whether jurisdiction under § 3231 is available if a Rule 48 motion is made after sentencing and appeal. Though perhaps not obvious, the answer appears to be yes.").

Recently, the Eleventh Circuit remanded *United States v. Brown*, No. 23-11146 (11th Cir. Feb. 26, 2025), a conviction pending appeal, so that the district court could consider and rule upon the Government's "*forthcoming* motion to dismiss the indictment" pursuant to Rule 48(a). *Id*. ECF No. 76-2 (emphasis added). The Eleventh Circuit retained jurisdiction of the appeal, but noted that should the

district court grant the motion to dismiss, that it expected that the appellant would move to dismiss his appeal as moot. *Id*.

In *Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010), this Circuit questioned whether Rule 48 allows dismissal following "conviction and *unsuccessful direct appeal*," but the Court did not resolve whether dismissal under Rule 48 was proper under those circumstances. *Id*. at 810. (emphasis added).

Mr. Costianes' case is not one in which the Government is moving to dismiss after the completion of the direct appeal. *Cf. Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended."). Rather, Mr. Costianes' appeal is pending like in *Brown* and *Burdeau*.

Thus, Rule 48 is properly invoked in this pending appeal and the district court, given jurisdiction under a pending appeal, may only deny a Rule 48 motion where it is "clearly contrary to manifest public interest." *United States v. Manbeck*, 744 F.2d 360, 372 (4th Cir. 1984) (quoting *Rinaldi*, 434 U.S. at 30). In fact, this Court's "precedent is that a district court '*must* grant a prosecution's [Rule 48] motion unless clearly contrary to manifest public interest.'" *Rice v. Rivera*, 617 F.3d at 811 (quoting *United States v. Kellam*, 568 F.3d 125, 133 (4th Cir. 2009)) (emphasis in *Rice v. Rivera*). Motions made pursuant to Rule 48 "implicate 'the constitutional issue of

the Separation of Powers Doctrine.'" *Rice*, 617 F.3d at 811 (citing *United States v. Smith*, 55 F.3d 157, 158 (4th Cir. 1995)).

The DOJ in Mr. Costianes' pending case "has exclusive authority and absolute discretion to decide whether to prosecute a case[.]" *See United States v. Nixon*, 418 U.S. 683, 693 (1974). The DOJ has decided to terminate prosecution of Mr. Costianes' non-final conviction.

Aside from a pardon causing mootness of the appeal, this Court can exercise its authority pursuant to 28 U.S.C. § 2106 to make disposition on this case as justice requires - to vacate the conviction - which is what the Government has requested, and to remand with instructions to dismiss. Because changes in the circumstances in this case include a full pardon <u>and</u> the DOJ's assertion that it no longer seeks to pursue this criminal action, (Doc. 33), the interests of justice require that the Court either consider the appeal mooted by the pardon or that it execute its 28 U.S.C. § 2106 authority.

Thus, not only should this Court entertain the relief requested by the parties pursuant to 28 U.S.C. § 2106, but respectfully, this Court should do what precedent and "justice requires," *Patterson*, 294 U.S. at 607, and order the parties' requested relief to vacate and remand for dismissal of the indictment.

2. **It is Prudent for the Court to Follow Precedent Since Pardons Moot Appeals, and the Circuit's Practice is to Vacate and Remand with an Order to Dismiss, as Requested in ECF No. 19, 20-1, 27.**

A pardon renders a case on appeal moot. In *United States v. Schaffer III*, 240 F.3d 35 (D.C. Cir. 2001), President Clinton issued a full and unconditional pardon for Schaffer's conviction while his case was on appeal. The *Schaffer* Court held that the (1) defendant's conviction was not established as a matter of law prior to the pardon where case was pending appeal when the pardon was granted; and (2) the pardon rendered his case moot and required vacatur of all opinions and judgments. *Id*. Thus, it was not required that the district court rule first, or that a formal motion to vacate sentence be filed. Rather, because the pardon was issued during the pendency of the appeal, the case was rendered "moot." *Id*. at 38. As such, "[w]hen a case becomes moot on appeal, whether it be during initial review" (as Mr. Costianes' case is currently pending in the Fourth Circuit), the court "generally vacates the District Court's judgment, vacates any outstanding panel decisions, and remands to the District Court with direction to dismiss." *Id*. (internal citations omitted).

Indeed, the usual disposition of a case mooted on appeal is for the appellate court to remand the case with directions to dismiss the action. *See United States v. Munsingwear*, 340 U.S. 36, 39-40 (1951); 13 Wright, Miller & Cooper, Federal Practice & Procedure s 3533, at 292-94 (1976). "Where it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set

aside the decree below and to remand the cause with directions to dismiss." *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 267 (1936). *See also Great Western Sugar Co. v. Nelson*, 442 U.S. 92 (1979) (reversing an appellate court for failing to follow the vacation technique).

Likewise, the Fourth Circuit has said that "[o]nce a case is rendered moot on appeal, we customarily vacate the opinions and remand with directions to dismiss." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021). *See also SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 390 (4th Cir. 2017) ("The customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment.").

The Fourth Circuit determined that "[b]ecause mootness implicates Article III jurisdiction," the Court has "an obligation to address it sua sponte." *Wild Va. V. Council on Env't Quality*, 56 F.4th 281, 292 (4th Cir. 2022). Thus, it is prudent for this Court to consider and grant the requested relief of vacatur, remand for judgment of dismissal, and release.

In *United States v. Surratt*, 855 F.3d 218 (4th Cir. 2017) (en banc), this Court held that the President's commutation of Surratt's sentence rendered his appeal moot. *Id.* at 219.

Similarly, Mr. Costianes' case should not go back to the district court to interpret, apply, or determine any issues relating to the applicability of the Pardon.

Rather, this Court should *sua sponte* find mootness because the case is properly on appeal, and the authority to vacate the lower court's judgment with direction to dismiss is properly within this Court's purview. There is no further argument on the merits because when a criminal defendant on appeal receives "the unpredictable grace of a presidential pardon," the pardon moots the appeal and "ends all litigation." *Schaffer,* 240 F.3d at 38.

### B. Answer to Question 2: The Judiciary Should Not Review and Interpret the Application of the EO Pardon Given That the DOJ Stated it Applies

This Court presents a fundamental question about who decides the application of a pardon—the President, through Article II, or the Judiciary *sua sponte*. The Constitution supplies a clear answer: the President. Under the U.S. Constitution Article II, § 2, the President has sole authority to issue a federal pardon. Congress may not legislate on the topic of pardons. The U.S. Supreme Court reaffirmed that "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Respectfully, the Court's questioning whether it should interpret the pardon portends judicial overreach into the Executive Branch's authority given by the U.S. Constitution.

Mr. Costianes is mindful that courts have resolved controversies over the application of a pardon where the Executive Branch *opposed* its application, and there was a controversy at hand. *See, e.g. U.S. v. Wilson*, 32 U.S. 150, 161 (1833)

(controversy as to whether the pardon applies for the person and the crimes charged); *Schick v. Reed*, 419 U.S 256 (1974) (parole board disagreeing with prisoner's interpretation of scope of pardon); *Andrews*, 958 F.3d at 1080 (government disagreeing with Andrews' interpretation of pardon).

Here, there is no controversy between the parties about the Pardon EO's application. The DOJ, speaking here for the sitting President who issued this EO, stated that the pardon applies. (ECF No. 20-1, 27, 33). "Article III limits the jurisdiction of federal courts to cases and controversies." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (citing U.S. Const. art. III, § 2, cl. 1). "The doctrine of mootness originates in Article III's 'case' or 'controversy' language.'" *Catawba Riverkeeper Found.*, 843 F.3d at 588 (internal citations omitted). The controversy must continue "through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Respectfully, the Court should not attempt to adjudicate the application of the pardon where there is no controversy before the Court.

1. <u>The President May Rely on Executive Officers to Administer Pardons and President Trump's EO Expressly Delegated Administration to the DOJ.</u>

The Constitution vests in the Executive the power to execute the laws. *See* U.S. Const. art. II § 1, cl. 1; *id.* § 3; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). "[T]he Executive acts through subordinates in carrying out the law," for example, by prosecuting its violations or effecting its punishments.

*Andrews*, 958 F.3d at 1077. "The President has long relied on executive officers to administer pardons." *Id.*

After the ratification of the Constitution, the President relied on the Secretary of State and the Attorney General for review and advice for individuals seeking pardons. Rachel E. Barkow, *Clemency and Presidential Administration of Criminal Law*, 90 N.Y.U. L. Rev. 802, 813-14 & n.65 (2015); Margaret Colgate Love, *The Twilight of the Pardon Power*, 100 J. Crim. L. & Criminology 1169, 1175-76 (2010). In the late 1800s, the Attorney General became the main adviser to the President concerning the issuance of pardons and the authority to issue pardons was transferred to the Justice Department by executive order of President Grover Cleveland. Love, *supra*, at 1176-80 & n.25. Later, the Office of the Pardon Attorney was created within the Department of Justice to assume responsibility for advising the President on clemency petitions, with the office continuing to fill that role today. *See* Office of the Pardon Att'y, *Frequently Asked Questions*, U.S. Dep't of Justice, https://www.justice.gov/pardon/frequently-asked-questions (last visited Mar. 6, 2025); *see also* 28 C.F.R. §§ 1.1–1.11 (regulating the process of Executive Clemency).

It is well-established that "[o]rdinarily, the President relies on the Department of Justice – specifically, the Attorney General and Office of the Pardon Attorney – to administer the pardon process." *Andrews*, 958 F.3d at 1078; *see* Office of the

Pardon Att'y, *Frequently Asked Questions*, *supra*; *see also* 28 C.F.R. §§ 1.1–1.11; *id.* § 1.9 Delegation of authority ("The Attorney General may delegate to any officer of the Department of Justice any of his or her duties or responsibilities under §§ 1.1 through 1.8."). The Attorney General relies on others to assist with administering a pardon and sentence. *Andrews*, 958 F.3d at 1077.

The January 20, 2025, Pardon by President Trump's Executive Order is no different in administration and execution. President Trump explicitly delegated authority to the Attorney General to administer the Pardon:

> The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately.

*See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025).

Moreover, President Trump explicitly delegated authority to the

> Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021.

*Id*.

Lastly, President Trump explicitly ordered the Bureau of Prisons, another arm of the Executive Branch, to "immediately implement all instructions from the Department of Justice regarding this directive." *Id*.

Thus, except for the vacatur and remand for dismissal order, the Judiciary should not intervene with the DOJ's application of the President's Executive Order, which specifically delegated to the DOJ the right to administer and effectuate the Pardon.

It is not for any court to divine why or whether the Department of Justice should apply the Pardon. *See United States v. Rosemond*, 10-cr-431 (LAK), 2024 WL 4043696, at *1 (S.D.N.Y. Sept. 4, 2024) (stating that "the judicial branch has no insight into the reasoning behind the clemency decision, the motivations of the president, or the politics that may be involved").

2. Complete Deference Should be Accorded to the DOJ's Application of the Pardon in this Case.

This is not the case of an agency rule under a legislative statute that can be subject to judicial interpretation. No party has brought a controversy about the Pardon EO that requires any judicial interpretation. But if the Court wants to consider caselaw surrounding Executive Orders that *were* brought into controversy, the "Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering." *Andrews*, 958 F.3d at 1078 (citing *Udall v. Tallman*, 380 U.S. 1, 4 (1965)); *see also* Matthew Chou, *Agency Interpretations of Executive Orders*, 71 Admin. L. Rev. 555, 575-89 (2019).

The Supreme Court explained that if an agency's "interpretation is not unreasonable" and "the language of the order[ ] bears [its] construction," "courts must…respect it." *Udall*, 380 U.S. at 4. Although deference to agencies in other contexts engenders debate, *see, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558, 592 (2019) (Gorsuch, J., concurring in the judgment), deference to an agency's interpretation is "sensible" in the context of a pardon. *Andrews*, 958 F.3d at 1078 (citing *Wilson*, 32 U.S. at 161-163). This is because, a pardon "is the private, though official, act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court." *Wilson*, 32 U.S. at 160-161.

Any argument about the EO application must consider the entire context of the EO and President's intent. The EO begins by referring to injustice and the need for national reconciliation. It is not just about conduct on January 6, 2021. The President's interviews and speeches have made clear that the EO is in the interest of justice, which include release from horrible jail conditions and mistreatment.

Because there is no controversy and the DOJ has spoken for the President, where there is only reasonableness and good faith on display for a Constitutional EO Pardon, the Court must give complete deference to the Motions at ECF No. 19, 27 and grant the relief of vacatur with remand for dismissal.

3. The President's Executive Order and Delegation to the DOJ to Administer and Effectuate the Pardon are Constitutional.

Acting pursuant to the grant of authority in Article II, § 2, of the Constitution of the United States, and listed in subsection (b) of the Executive Order, the DOJ speaking for President Trump stated that he "*grant[ed] a full, complete and unconditional pardon*" to Mr. Costianes. *See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025) (emphasis added). The President delegated authority to the Attorney General to "administer and effectuate" the pardon. *Id*. The DOJ has determined that the pardon applies to this case.

Article II of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S Const. art. II, § 1, cl. 1. Such executive Power is "unrivaled" and broad. *Trump v. Vance*, 591 U.S. 786, 800 (2020). Pardons cannot involve impeachments or violate the Constitution.

Where the President's authority stems from the Constitution itself, as is here, the President's authority is "conclusive and preclusive." *Trump v. United States*, 603 U.S. 593, 607 (2024) (citing *Youngstown*, 343 U.S. at 585). Importantly, "*the courts have 'no power to control [the President's] discretion when he acts pursuant to the powers invested exclusively in him by the Constitution*." *Trump v. United States*, 603 U.S. 593, 607 (2024) (citing *Marbury*, 1 Cranch, at 166) (emphasis added).

When "*the President acted within the scope of his exclusive authority, his discretion in exercising such authority cannot be subject to further judicial*

*examination*." *Trump*, 603 U.S. at 608 (emphasis added). The power is vested by the Constitution. *Id*.

The Supreme Court reviewed *United States v. Klein*, 80 U.S. 128 (1872), a case in which Congress enacted a provision seeking to undermine President Lincoln's pardon with restoration of property rights, to anyone who had "engaged in the rebellion" but agreed to take an oath of allegiance to the Union. In *Klein*, Chief Justice Chase held that Congress's attempt to prohibit the President's pardon was unconstitutional because it "impair[ed] the effect of a pardon, and thus infring[ed] the constitutional power of the Executive." *Id*. at 147. The *Klein* Court emphasized that "[t]o the executive alone is [e]ntrusted the power of pardon," and the "legislature cannot change the effect of such a pardon any more than the executive can change a law." *Id*. at 147-148. The Supreme Court said that "[t]he President's authority to pardon, in other words, is 'conclusive and preclusive,' 'disabling the Congress from acting upon the subject.'" *Trump*, 603 U.S. at 608 (citing *Youngstown*, 343 U.S. at 637-638). So too is the judiciary precluded from changing the effect of any such pardon.

"The Constitution places few restrictions on the Executive's pardon power." *Andrews*, 958 F.3d at 1076. The President possesses "broad power" to "'forgive' the convicted person in part or entirely[.]" *Schick*, 419 U.S. at 266. "So long as the President does not use the power to pardon to violate another provision of the

Constitution, Congress and the Judiciary have no power to interfere with its exercise." 958 F.3d at 1076 (citing *Schick*, 419 U.S. at 264, 266-67; *see also Ohio Adult Parole Auth. V. Woodard*, 523 U.S. 272, 276 (1998) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.").

Here, Mr. Costianes' federal Maryland convictd offense was against the United States and was not a case of impeachment. Moreover, the President's Pardon did not violate any other provision of the Constitution. Thus, the Judiciary does not have the power to interpret or interfere with the President's exercise of his pardon power, including the vested administration and application of the pardon by the DOJ.

Thus, in Mr. Costianes' case, "[t]he Judiciary has no authority in matters of clemency. There is no point in remanding the matter to the District Judge[.]" *United States v. Missio*, 597 F.2d 60, 62 (5th Cir. 1979). Because the DOJ in speaking for the President and administering the Pardon EO has stated without any controversy among the parties that the Pardon EO applies to Mr. Costianes for this case, this Court must exercise its jurisdiction and vacate the lower court judgment and remand for dismissal.

### C.  Answer to Question 3: The Pardon Applies in this Case Under its Full Text Where Application is Not Unreasonable.

The Pardon consists of an introduction with intent and specifics related to January 6th. The text included, "This proclamation ends a grave national injustice

that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation." (EO, ECF Doc. 19 at 24). The President's speeches and interviews have consistently highlighted his intent to rectify mistreatment of those investigated and accused of January 6 offenses.

Assuming *arguendo*, the Court were to conduct any analysis task of the Pardon EO, that task would be limited to determination of whether the DOJ's application and "interpretation is not unreasonable." *Udall*, 380 U.S. at 4. If "the language of the order[ ] bears [its] construction," "*courts must…respect it.*" *Udall*, 380 U.S. at 4 (emphasis added). Here, because the DOJ's application of the Executive Order to Mr. Costianes' case is not unreasonable, and the language of the order bears its construction, the Court must respect it.

1. The Department of Justice Applied a Fact-Intensive and Case-Specific Inquiry After Consultation with Leadership within the Department of Justice.

In determining that the Executive Order applies to Mr. Costianes' present case, the DOJ wrote that:

> Four years ago, in February 2021, federal agents executed a search warrant on Mr. Costianes's Maryland residence. ECF No. 33 at 2. The agents were searching for evidence of offenses related to the events of January 6. *Id*. While executing the warrant, they discovered evidence that Mr. Costianes was non-violently possessing contraband in violation of federal law. *Id*. at 2-4. He was indicted on several charges, ECF No. 34, and pleaded guilty to one of them under a plea agreement, ECF No. 83.

(ECF No. 20-1 at 2).

The DOJ further wrote that:

Whether the pardon applies is a fact-intensive and case-specific inquiry. After consulting with the Department of Justice's leadership, the United States has concluded that the President pardoned Mr. Costianes of the offenses in the indictment.

(ECF No. 20-1 at 3).

The fact-intensive and case-specific inquiry that the DOJ conducted in this case was its exclusive prerogative, was not unreasonable, was done in good faith, and the language of President Trump's Pardon bears its construction.

All the evidence acquired by the Government in the federal district of Maryland resulted from the Government's investigation of Mr. Costianes' actions "related to events that occurred at or near the United States Capitol on January 6, 2021." The Maryland case stemmed directly from the execution of the search warrant in which the Government was looking for evidence concerning weapons, state of mind, and unlawful entry into the U.S. Capitol. (ECF No. 20-1 at 2). *Accord* Government's Affidavit for the Search Warrant (Exhibit A).

The "Target Offenses" listed in the Government's Affidavit for the Search Warrant all encompassed alleged activity relating to Mr. Costianes' presence on January 6, 2021, at the U.S. Capitol. Specifically, the Government requested permission to search for and seize the following property:

a. Evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

b. Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

c. Evidence concerning awareness of the official proceeding that was to take place at Congress on January 6, 2021, *i.e.*, the certification process of the 2020 Presidential Election;

d. Evidence concerning efforts to disrupt the official proceeding that was to take place at Congress on January 6, 2021, *i.e.*, the certification process of the 2020 Presidential Election;

e. Evidence relating to a conspiracy to illegally enter and/or occupy the U.S. Capitol on or about January 6, 2021;

f. Evidence concerning the breach and unlawful entry of the U.S. Capitol, and any conspiracy or plan to do so, on January 6, 2021;

g. Evidence concerning the riot and/or civil disorder at the U.S. Capitol on January 6, 2021;

h. Evidence concerning the assaults of federal officers/agents and efforts to impede such federal officers/agents in the performance of their duties at the U.S. Capitol on January 6, 2021;

i. Evidence concerning damage to, or theft of, property at the U.S. Capitol on January 6, 2021;

j. Evidence of any conspiracy, planning, or preparation to commit the Target Offenses;

k. Evidence concerning after-the-fact efforts to conceal evidence of those offenses, or to flee prosecution for the same;

l. Evidence concerning materials, devices, or tools that were used to unlawfully enter the U.S. Capitol by deceit or by force, including weapons and elements used to breach the building or to counter efforts by law enforcement, such as pepper spray or smoke grenades;

m. Evidence of communication devices, including closed circuit radios or walkie-talkies, that could have been used by co-conspirators to communicate during the unlawful entry into the U.S. Capitol;

n. Evidence of the state of mind of the Subject and/or other co-conspirators…; and

o. Evidence concerning the identity of persons….

*See* Exhibit A- Affidavit Attachment B, ¶ 1. (Emphasis added)

The affidavit further requested permission to search for digital "communications, emails, online postings, [etc]" that related to:

a. Any records and/or evidence revealing the Subject's presence at the January 6, 2021 riot;

b. Any physical records, such as receipts for travel, which may serve to prove evidence of travel to or from Washington D.C. from December of 2020 through January of 2021;

c. The Subject's (and others') motive and intent for traveling to the U.S. Capitol on or about January 6, 2021; and

d. The Subject's (and others') activities in and around Washington, D.C., including the U.S. Capitol, on or about January 6, 2021.

*See* Exhibit A - Affidavit's Attachment B, ¶ 4.

In addition to objects that could serve as weapons and the state of mind, the affidavit requested "Digital devices used in the commission of, to facilitate, or to plan the *above-described offenses*" and further requested "any digital device which is capable of containing and reasonably *could contain evidence, fruits, or*

*instrumentalities of the Target Offenses as described in the search warrant affidavit*

*and above[.]*" *See* Exhibit A - Affidavit's Attachment B, ¶¶ 5, 6 (emphasis added).

That warrant was signed on February 10, 2021, and executed upon Mr. Costianes, *along with an arrest warrant for the January 6th event*, on February 12, 2021. *See* D. Md. ECF No. 33, pp. 1-2 (Government's Motion stating that "on February 10, 2021, the U.S. District Court for the District of Maryland issued warrants authorizing, among other things, a search of the Defendant's residence…*for evidence, fruits, and instrumentalities of the Defendant's participation in the Capitol riot*…Two days later, on February 12, 2021, members of the…FBI…executed the search and arrest warrants at the Defendant's residence.") (emphasis added).

The U.S. Attorney's Office in Maryland utilized the information discovered pursuant to the January 6th Investigation and search warrant to seek the conviction in this case. The offense date in the D. Md. charges was the date of the execution of the search warrant and arrest of Mr. Costianes on the criminal complaint for the January 6th case. *See* D. Md. ECF No. 83. Mr. Costianes pled guilty to Count 9 of the Superseding Indictment, and issues related to that were for his appeal, which is mooted by the Pardon EO. *See* D. Md. ECF No. 34, ECF No. 83.

The statement of facts supporting that plea agreement demonstrate that the Maryland offense related to the events at the U.S. Capitol:

> [A]gents with the Federal Bureau of Investigation ("FBI") executed a search warrant at the Defendant's residence in Nottingham, Maryland.

COSTIANES was present and taken into custody pursuant to an arrest warrant that had been issued by the U.S. District Court for the District of Columbia. Agents also seized an iPhone in connection with COSTIANES's arrest.

*See* D. Md. ECF No. 83.

Thus, because of the Department of Justice's "fact-intensive and case-specific inquiry" and "[a]fter consulting with the Department of Justice's leadership, the United States has applied the Pardon EO in full context of words and intent, and in good faith stated for the President that the President pardoned Mr. Costianes of the offense[ ]" for which he was convicted. (ECF No. 20-1 at 3, No. 33).

    2. The DOJ Applied the "Related to" Application in Other Cases.

The reasonableness and good faith of the DOJ's statements about the pardon in Mr. Costianes' case are also supported by the fact that the DOJ is taking a unified stance with respect to other cases, similarly situated, in which the separate charges were filed as a result of the execution of search warrants looking for evidence related to the January 6th case. In *Zachariah Sattler*, No. 23-cr-00438-JRR (D. Md.), the DOJ moved for leave to "dismiss the indictment with prejudice" stating as follows:

> While executing a warrant on a Maryland residence to search for evidence of offenses related to the events at or near the U.S. Capitol on January 6, 2021, federal agents discovered evidence that Mr. Sattler was non-violently possessing firearms in violation of federal law. A grand jury indicted him in two counts…those charges remain pending…
>
> After consulting with the Department of Justice's leadership, the United States has concluded that President Donald J. Trump pardoned Mr.

Sattler of the offenses in the indictment…President Trump's pardon represents 'the determination of the ultimate authority that the public welfare will be better served by' this act of grace…than the prosecution of the offenses.

ECF No. 38, 23-cr-00438-JRR.

The District Court granted that motion on February 27, 2025. ECF No. 41, 23-cr-00438-JRR.

Similarly, in *United States v. Daniel Ball*, No. 24-cr-97-TPB-PRL (M.D. Fla.), the DOJ moved pursuant to Rule 48(a) to dismiss the indictment pending against Ball, with prejudice, citing the Pardon EO as the reason for the dismissal. ECF No. 42, 24-cr-97-TPB-PRL. The district court granted that motion. ECF No. 45, 24-cr-97-TPB-PRL.

Mr. Costianes is aware that a district court judge in D.D.C. determined that the pardon did not apply, and that deference was not warranted to the DOJ, in a case where, unlike Mr. Costianes', the Government originally took a position that that pardon did not apply, and therefore, there was an issue in controversy. *See U.S. v. Wilson*, No. 25-cv-545 (No. 23-cr-427-1) (D.D.C. Mar. 13, 2025, Memorandum Opinion). *Wilson* is distinguishable because his case was not on appeal, but rather, was a final judgment which was the subject of a § 2255 claim.

3.  <u>The Language and Intent of the Pardon Demonstrate the Reasonableness and Good Faith of the DOJ's Application in this Case.</u>

The purpose of the Executive Order is stated in its first sentence: "This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025). That the DOJ determined that the "grave national injustice" includes the non-final conviction and sentence in Mr. Costianes' current case is not unreasonable.

Moreover, the reasonableness and good faith of the DOJ's application is further supported by the fact that President Trump's Pardon is "*a full, complete and unconditional pardon*[.]" *See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025) (emphasis added).

Lastly, the DOJ's statements that Mr. Costianes' case falls within the full, complete, and unconditional pardon "*to all other individuals convicted of offenses related to events* that occurred at or near the United States Capitol on January 6, 2021," Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025), is reasonable.

The "related to" language would be superfluous and surplusage if it were not given the construction applied by the DOJ on behalf of the President. "Related to" is not synonymous with "arising out of[.]" *Accord In re Murray Energy Holdings Co.*, 662 B.R. 604, 618 (U.S. Bank., S.D. Ohio, West. Div. Aug. 30, 2024) (court does not have to have "related to" jurisdiction to exercise "arising in" jurisdiction,

distinguishing between "related-to jurisdiction – not arising-under or arising-in jurisdiction.") (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). President Trump did not say that the pardon only applied to a defendant's conviction *for offenses at or near the Capitol*. Rather, the Executive Order included the language covering "convictions of offenses *related to* events at or near the Capitol." The investigation and searches are applied in good faith as reasonably "related to" under the language of the Pardon EO.

It is reasonable that the conviction in the D. Md. case was a conviction for an offense *related to* events at or near the Capitol. Mr. Costianes was indeed convicted for an offense that related to his events at the Capitol. The D. Md. case can be considered the fruit of the poisonous tree, and unquestionably fell under the President's intent regarding the unfairness and injustices surrounding all of January 6th. As convicted, the federal Maryland offense was "co-occurring" at the time of January 6, 2021, and while Mr. Costianes was at the U.S. Capitol, because he was still possessing the firearms at his residence while being a user or addict of controlled substances, even when he was at the Capitol. *Accord U.S. v. Gallimore*, 247 F.3d 134, 136-37 (4th Cir. 2001) (approving constructive possession for a § 922 violation, even if the defendant is not home at the time, where the evidence demonstrates that the defendant had access to or power to exercise dominion and control over the items).

If considering deference, even if the DOJ's statement applying the Pardon may not be the only interpretation given by the language of the Executive Order, it is quite clearly a reasonable application, and courts must therefore respect it. *Udall*, 380 U.S. at 4 (citing *McLaren v. Fleischer*, 256 U.S. 477, 481; *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413). *Accord Andrews*, 958 F.3d at 1079 (The Bureau read the commutation order more generously and in favor of Andrews, and its reading is both reasonable and entitled to deference.).

The President has not in any way indicated that the Executive Order does not apply. Because of the above, this Court should accord complete deference to the DOJ's reasonable declaration about the sitting President's Pardon Proclamation.

## IV.   <u>CONCLUSION</u>

Mr. Costianes asks this Court to exercise its discretion under 28 U.S.C. § 2106 and the case law to do what precedent for mootness and the interests of justice demand, which is to vacate the district court's judgment and opinion, and to order that the case be remanded with instructions to dismiss the indictment with prejudice or as moot pursuant to Rule 48(a). Because there is no controversy that the Pardon EO applies to Mr. Costianes, where the DOJ in good faith under vested authority stated that it has no intent to prosecute and wants to dismiss this non-final conviction as it has done for defendants similarly situated, this Court should grant the requested relief, to include ordering his immediate release from custody.

March 31, 2025                    Respectfully submitted,

                                 *Megan E. Coleman*

                                 Megan E. Coleman
                                 MarcusBonsib, LLC
                                 6411 Ivy Lane, Suite 116
                                 Greenbelt, Maryland 20770
                                 (301) 441-3000
                                 megancoleman@marcusbonsib.com

                                 *CJA Counsel for Appellant*


                                 *Carolyn Stewart*

                                 Carolyn Stewart
                                 Stewart Country Law PA
                                 1204 Swilley Rd.
                                 Plant City, FL 33567
                                 (813) 659-5178
                                 Carolstewart_esq@protonmail.com

                                 *Pro Bono Attorney for Appellant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served this 31st day

of March, 2025, upon the Office of the United States Attorney, *via* CM/ECF.


                                 */s/ Megan E. Coleman*
                                 Megan E. Coleman

# **CERTIFICATE OF COMPLIANCE**

This Answer to the Court's Questions is <u>10,470</u> words. This Answer does not fit perfectly into a motion pursuant to Fed. R. App. P. 27, nor a brief pursuant to Fed. R. App. P. 32. Therefore, Appellant is contemporaneously filing a Motion for Permission to File Answer for the word count stated herein.

This Answer complies with the typeface and type-style requirements in Fed. R. App. P. 32(a)(5) an (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 31, 2025.

*/s/ Megan E. Coleman*
Counsel for Appellant
